UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

GALINA BENIMOVICH,

                Plaintiff,

    -v-

FIELDSTON OPERATING LLC, DAVID
LANDA and YOSEF RUBIN,

                Defendants.

------------------------------------------------------------X

No. 11 Civ. 780 (RA)

MEMORANDUM OPINION
AND ORDER

RONNIE ABRAMS, United States District Judge:

Plaintiff Galina Benimovich brings this action against Defendants Fieldston Operating LLC, David Landa and Yosef Rubin (collectively, "Defendants"), asserting claims under the Family and Medical Leave Act, 29 U.S.C. § 2601 et seq. ("FMLA"), the New York State Human Rights Law, N.Y. Exec. Law § 290 et seq. ("NYSHRL") and the New York City Human Rights Law, N.Y. Admin. Code § 8-101 ("NYCHRL"). Defendants now move for summary judgment pursuant to Federal Rule of Civil Procedure 56. For the reasons stated below, Defendants' motion is denied.

## I.  Background[1]

Benimovich commenced her employment with Fieldston, a nursing home in Bronx, New York, on February 20, 2006 as Payroll and Accounts Payable Manager. (Defs.' 56.1 ¶¶ 2, 7; Pl.'s 56.1 ¶¶ 2, 7.) Landa is an owner and member of Fieldston, as well as its president and operator. (Pl.'s 56.1 ¶ 3.) Rubin is an owner and member of Fieldston and oversees

---

[1] The following facts are drawn from Defendants' Rule 56.1 statement ("Defs.' 56.1"), Plaintiff's Rule 56.1 statement ("Pl.'s 56.1"), and supporting documentation. The facts are undisputed unless otherwise noted; where disputed, they are construed in the light most favorable to Benimovich. See Fed. Ins. Co. v. Am. Home Assurance Co., 639 F.3d 557, 566 (2d Cir. 2011).

maintenance and housekeeping at the nursing home two days per week. (Pl.'s 56.1 ¶ 4.)

As Payroll and Accounts Payable Manager, Benimovich reported to Landa and Rubin, as well as Andrea Mayer, another owner of Fieldston, and Mayer Spilman, Fieldston's administrator. (Pl.'s 56.1 ¶ 9.) Her responsibilities included, *inter alia*, payroll processing and management, preparing union reports, processing accounts payable and paying bills. (Defs.' 56.1 ¶ 8; Pl.'s 56.1 ¶ 8.) She also prepared paychecks but had no authority to sign them; she drafted them for Landa, Rubin or Mayer Spilman to review and sign. (Pl.'s 56.1 ¶ 8.)

Rubin terminated Benimovich on November 16, 2010. (Defs.' 56.1 ¶¶ 86-87; Pl.'s 56.1 ¶¶ 86-87.) The parties disagree about the events leading up to her termination. According to Defendants, Landa and Mayer Spilman had decided to terminate Benimovich several months earlier, in May 2010, due to her "excessive mistakes," but chose to first hire and train a replacement before firing her. (Defs.' 56.1 ¶¶ 56-57.) Only Landa and Mayer Spilman were involved in the May 2010 decision to terminate Plaintiff and no documents exist memorializing it. (Id. ¶ 56; M. Spilman Dep. 77:23-78:15.) Defendants cite three categories of conduct that led to Benimovich's termination: her "improper and inaccurate processing of Fieldston's employees' payroll records for the purpose of assisting Yevginiy Yampolskiy, Fieldston's Director of Nutrition Services, in manipulating hours in order to meet weekly hour quotas or par levels;" her failure to timely pay Fieldston's health insurance premiums and vendors; and her "failure to issue accurate paychecks thereby causing the checks to be voided." (Defs.' 56.1 ¶¶ 12, 20, 37, 40, 46.)

Landa and Mayer Spilman testified that they decided to hire Leah Spilman in May 2010 and informed her that they were replacing their Payroll and Accounts Payable Manager because

2

they were not happy with her performance.[2] (Id. ¶ 60; Landa Dep. 194:22-96:18; M. Spilman Dep. 40:10-44:24.) Leah Spilman accepted the offer in June 2010 and attended training and orientation sessions in July through September 2010. (Id. ¶¶ 62-65; Defs.' Ex. J (L. Spilman Personnel File).) She began working as Payroll and Accounts Payable Manager on October 12, 2010. (Defs.' 56.1 ¶ 66; Pl.'s 56.1 ¶ 66.)

Benimovich disputes each of Defendants' reasons for terminating her, (Pl.'s 56.1 ¶¶ 11-50), as well as the timing of their decision. (Id. ¶¶ 56-65.) She points to the lack of documentation supporting Landa's and Mayer Spilman's description of these events and highlights inconsistencies in the deposition testimony of Landa, Mayer Spilman and Leah Spilman. (Id. ¶ 57.) Moreover, the record reflects that Benimovich's work performance was rarely, if ever, criticized. She never received any verbal or written evaluations, (see Benimovich Dep. 32:21-35:4, 62:11-21; Landa Dep. 100:15-01:21; see also Tirado Dep. 116:16-25, 122:3-23; M. Spilman Dep. 78:16-79:22), and both Landa and Mayer Spilman only recall sporadic instances in which they raised a specific problem with Benimovich about her work performance. (See Landa Dep. 100:3-12 (noting that he "never [got] into her general performance"); M. Spilman Dep. 154:3-55:23.) By contrast, three of Benimovich's colleagues in the Finance Department received verbal and written warnings regarding their work performance, (M. Spilman Dep. 87:6-111:4; Tirado Dep. 128:7-53:20; Pl.'s Exs. 8-10 (Employee Counseling Forms for Finance Department Employees)), and two were subsequently terminated for failing to improve.

Benimovich instead contends that Defendants decided to terminate her in November 2010 after she went on FMLA leave for knee replacement surgery. In 2007 or 2008, Benimovich

---

[2] Leah Spilman is Mayer Spilman's sister-in-law and she is a close friend of Landa's family. (Pl.'s 56.1 ¶ 57.)

3

was diagnosed with arthritis in her knees. (Benimovich Dep. 36:2-25; Defs.' Ex. 1 (Benimovich's Medical Records).) In affidavits submitted to the Court from Benimovich and her former colleagues, Kimberly McIntosh and Minerva Miranda, they state that in the fall of 2009, Benimovich began discussing her condition and the possibility of knee replacement surgery with her colleagues and supervisors. (Benimovich Aff. ¶ 10; McIntosh Aff. ¶¶ 3-4; Miranda Aff. ¶¶ 3-4).[3] In any event, in June 2010, she began discussing with colleagues and supervisors her decision to have surgery but she did not yet have a date for surgery. (Benimovich Dep. 45:2-25.) On August 23, 2010, Benimovich gave Mayer Spilman a letter from her physician dated August 20, 2010, which stated that "[patient] will be having surgery on her [right] knee on 10/11/10 for replacement. [Patient] will need to be excused for two months." (Defs.' 56.1 ¶¶ 67, 70; Pl.'s 56.1 ¶ 67; Benimovich Dep. 54:3-23.) This was the first time she asked to take time off due to her medical condition. (Benimovich Dep. 55:4-56:19.) Upon receiving this request, Rubin, Landa, Tirado and Mayer Spilman did not tell her that she could not take a leave of absence or that she would be penalized for taking time off. (Defs.' 56.1 ¶ 74; Pl.'s 56.1 ¶ 74.) Benimovich had knee replacement surgery on October 13, 2010, one day after Leah Spilman began working at Fieldston.[4] (Defs.' 56.1 ¶ 81; Pl.'s 56.1 ¶ 81.) She continued to be paid and receive benefits while on leave. (Defs.' 56.1 ¶ 82; Pl.'s 56.1 ¶ 82.) On November 11, 2010, Benimovich learned for the first time that she had been replaced and called Landa to

---

[3]   As Defendants rightly note, Benimovich states for the first time in her affidavit that she notified Defendants in the fall of 2009 of her need for knee replacement surgery and FMLA leave. That statement contradicts her prior deposition testimony that she began discussing her decision to have surgery with her colleagues and supervisors in June 2010. "It is well settled that 'factual allegations that might otherwise defeat a motion for summary judgment will not be permitted to do so when they are made for the first time in the Plaintiff's affidavit opposing summary judgment and that affidavit contradicts her own prior deposition testimony.'" Simmons v. Woodycrest Ctr. for Human Dev., Inc., No. 10 Civ. 5193 (JSR), 2011 WL 855942, at *1 n.1 (S.D.N.Y. Mar. 9, 2011) (quoting Brown v. Henderson, 257 F.3d 246, 252 (2d Cir. 2001)). Thus, for purposes of this motion, the Court does not consider that statement in her affidavit.

[4]   Benimovich's surgery was rescheduled from October 11, 2010 to October 13, 2010. (Defs.' 56.1 ¶ 80; Pl.'s 56.1 ¶ 80.)

offer to return to work. (Pl.'s 56.1 ¶ 83; Benimovich Dep. 68:3-70:19.) On November 16, 2010, Benimovich met with Rubin, at which time he terminated her. (Defs' 56.1 ¶¶ 86-87; Pl.'s 56.1 ¶¶ 86-87.) Rubin played no role, however, in the decision to terminate her. (Rubin Dep. 46:18-23.)

Plaintiff commenced this action on February 4, 2011 asserting five causes of action against Defendants: (1) interference pursuant to the FMLA; (2) retaliation pursuant to the FMLA; (3) disability discrimination pursuant to the NYSHRL and NYCHRL; (4) aiding and abetting disability discrimination pursuant to the NYSHRL and NYCHRL; and (5) failure to provide a reasonable accommodation pursuant to the NYSHRL and NYCHRL. Defendants filed the instant motion for summary judgment on July 6, 2012, seeking to dismiss all claims. Because the Court finds that there are genuine issues as to material facts, it denies Defendants' motion in its entirety.

## II.   Summary Judgment Standard

Summary judgment is appropriate only where "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of showing that it is entitled to summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). "While conclusory statements or mere allegations are not sufficient to defeat a summary judgment motion," the court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." Donnelly v. Greenburgh Cent. School Dist. No. 7, 691 F.3d 134, 141 (2d Cir. 2012) (internal citations omitted); Mandel v. Rofe, No. 10 Civ. 6045 (RMB), 2012 WL 1981453, at *3 (S.D.N.Y. May 31, 2012) ("Where much of the evidence presented can be reduced to a 'he said, she said' battle, it must be viewed in the light most

favorable to plaintiff, with all reasonable inferences being drawn in her favor.") (internal quotation marks omitted).

In conducting this inquiry, "[t]he role of the court is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." Brod v. Omya, Inc., 653 F.3d 156, 164 (2d Cir. 2011). "[I]f there is any evidence in the record from any source from which a reasonable inference in the nonmoving party's favor may be drawn, the moving party simply cannot obtain summary judgment." Binder & Binder PC v. Barnhart, 481 F.3d 141, 148 (2d Cir. 2007). "[C]redibility determinations, the weighing of the evidence and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." Anderson, 477 U.S. at 255.

## III. Discussion

### A. FMLA Claims

"The FMLA affords eligible employees an 'entitlement' to twelve weeks of unpaid leave per year." Di Giovanna v. Beth Israel Med. Ctr., 651 F. Supp. 2d 193, 196 (S.D.N.Y. 2009) (quoting 29 U.S.C. § 2612(a)(1)). The Second Circuit recognizes distinct claims for interference and retaliation under the FMLA. Id. at 198-99 (citing 29 U.S.C. § 2615(a)(1)); 29 C.F.R. § 825.220(c). Benimovich brings both claims here.

#### 1. FMLA Interference

Defendants argue that Benimovich's FMLA interference claim fails as a matter of law because their decision to terminate her was made in May 2010, months before she requested FMLA leave in August 2010, and Defendants provided her with the leave she requested.[5] Plaintiff contends that there are material issues of fact as to each of these assertions, precluding

---

[5] Defendants also argue that Benimovich's interference claim should be dismissed as a matter of law because Defendants' decision to terminate her was legitimate and non-discriminatory. Defendants' proffered reason for her termination is more appropriately considered in the context of Benimovich's retaliation claims. See infra Section III.A.2.

6

summary judgment on this claim.

To establish an FMLA interference claim, a plaintiff must prove that an "employer in some manner impeded the employee's exercise of his or her right" under the FMLA. Sista v. CDC Ixis N. Am., Inc., 445 F.3d 161, 176 (2d Cir. 2006). A *prima facie* claim of FMLA interference requires a plaintiff to show that: "(1) she is an eligible employee under the FMLA; (2) defendants constitute an employer under the FMLA; (3) she was entitled to leave under the FMLA; (4) she gave notice to defendants of her intention to take leave; and (5) defendants denied her benefits to which she was entitled by the FMLA." Di Giovanna, 651 F. Supp. 2d at 199.

This claim survives summary judgment because it is disputed whether Defendants decided to terminate Benimovich prior to her request for leave in May 2010 or during her leave in November 2010, when she was first notified of her termination. "[A]n employer is not liable for 'interfering' with an employee's leave when the employee would have been terminated regardless of the leave." See Pearson v. Unification Theological Seminary, 785 F. Supp. 2d 141, 162 (S.D.N.Y. 2011) (citing Sista, 445 F.3d at 175-77). Thus, if an employer had made the decision to terminate an employee prior to learning of her FMLA leave, such termination would not constitute interference. See id. Defendants assert that Landa and Mayer Spilman decided to terminate Plaintiff in May 2010 due to her excessive mistakes on the job. Only Landa and Mayer Spilman participated in this decision and it was not memorialized in any way. Defendants further contend that they hired and trained another person before terminating Plaintiff. This chronology is supported by the testimony of Landa, Mayer Spilman and Leah Spilman, as well as evidence that Leah Spilman reviewed the Fieldston employee handbook and attended orientation and training sessions in the summer of 2010. Benimovich disputes each of these

facts, relying in large part on the lack of corroborating documentary evidence and inconsistencies in the deposition testimony. She contends that the familial and personal relationships between Landa, Mayer Spilman and Leah Spilman further cast doubt on the credibility of their testimony. She also asserts that she was never criticized, disciplined or warned about her mistakes and possible termination, in contrast to the discipline of her colleagues. Finally, she notes that Tirado, the Director of Human Resources, was "shocked" by her termination. (Tirado Dep. 90:17-18.)

At this stage of the litigation, it is not the role of the Court to weigh this evidence or determine the credibility of any party or witness. See Anderson, 477 U.S. at 255; Behringer v. Lavelle Sch. for the Blind, No. 08 Civ. 4899 (JGK), 2010 WL 5158644, at *17 (S.D.N.Y. Dec. 17, 2010) (denying summary judgment on FMLA retaliation claim because questions of credibility of witnesses could not be resolved at summary judgment). Moreover, Defendants do not have any written corroboration of Landa and Mayer Spilman's termination decision. See, e.g., Voltaire v. Home Servs. Sys., 823 F. Supp. 2d 77, 94-95 (E.D.N.Y. 2011) (citing lack of corroborating evidence to support employer's claim that it had decided to terminate plaintiff before FMLA leave as grounds for denying summary judgment on FMLA claim); see also Zimmerman v. Assocs. First Capital Corp., 251 F.3d 376, 379 (2d Cir. 2001) (finding notable the employer's failure to "offer a single item of documentary evidence to support its assertion that it fired [employee] for inferior performance"). Drawing all inferences in favor of Benimovich, she has presented sufficient evidence to create a factual question that must be resolved by a jury.

### 2. FLMA Retaliation

Defendants contend that Benimovich's FMLA retaliation claim must also be dismissed because Landa and Mayer Spilman decided to terminate her prior to learning of her request for

FMLA leave and because Defendants had legitimate, non-discriminatory reasons for terminating her. Plaintiff asserts that material issues of fact exist as to each of these arguments. The Court agrees and therefore denies summary judgment on this claim as well.

FMLA retaliation claims are analyzed under the McDonnell Douglas burden-shifting framework. See Potenza v. City of New York, 365 F.3d 165, 168 (2d Cir. 2004). To establish a *prima facie* case of retaliation under the FMLA, a plaintiff must establish that: (1) she exercised rights protected under the FMLA; (2) she was qualified for her position; (3) she suffered an adverse employment action; and (4) the adverse employment action occurred in circumstances giving rise to an inference of retaliatory intent. Id. The plaintiff's burden at this stage is minimal. Di Giovanna, 651 F. Supp. 2d at 204 (citing Schnabel v. Abramson, 232 F.3d 83, 87 (2d Cir. 2000)). If a plaintiff makes out a *prima facie* case, "a presumption of retaliation is created and the burden of production shifts to the defendant to articulate a legitimate, non-discriminatory reason for the termination." Id. at 203 (citing Farias v. Instructional Sys., 259 F.3d 91, 98 (2d Cir. 2001)). "If the employer does so, the presumption of discrimination is rebutted and 'simply drops out of the picture.'" Id. (quoting St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 510-11 (1993)). "The burden then shifts back to the plaintiff to show, without the benefit of any presumptions, that more likely than not the employer's decision was motivated, at least in part, by a discriminatory reason." Id. at 203-04. To determine this, the court must use a case by case approach that evaluates "the strength of the plaintiff's *prima facie* case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports [or undermines] the employer's case." James v. N.Y. Racing Ass'n, 233 F.3d 149, 156 (2d Cir. 2000) (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 148-49 (2000)); Di Giovanna, 651 F. Supp. 2d at 205 (applying this test to FMLA retaliation claim).

Although the parties do not address whether Benimovich has made a *prima facie* case of retaliation, the Court finds that she satisfies this minimal threshold. She was terminated while on FMLA leave and there is a close temporal proximity between the exercise of her FMLA rights and her termination. See Behringer, 2010 WL 5158644, at *15 ("Temporal proximity between a plaintiff's exercise of FMLA rights and an adverse employment action can give rise to an inference of retaliation where the 'protected activity was closely followed in time by the adverse action.'") (quoting Cifra v. Gen. Elec. Co., 252 F.3d 205, 217 (2d Cir. 2001)); Reilly v. Revlon, Inc., 620 F. Supp. 2d 524, 538 (S.D.N.Y. 2009). The burden thus shifts to Defendants to articulate a legitimate, non-discriminatory reason for their decision to terminate her. Defendants cite three categories of conduct that supported their decision: Benimovich improperly assisted Yampolskiy in "manipulating hours" to meet weekly quotas; she failed to timely pay Fieldston's health insurance premiums and vendors; and she failed to issue accurate paychecks, causing some to be voided. Defendants' supporting evidence is minimal. They rely primarily on deposition testimony of Landa and Mayer Spilman but provide no conclusive documentation showing that Benimovich in fact engaged in such conduct. However, to meet their burden of production, Defendants need only "present a clear explanation" for their action, which they have done. See Cretella v. Liriano, 633 F. Supp. 2d 54, 72 (S.D.N.Y. 2009).

Accordingly, the burden shifts back to Benimovich to show that these proffered reasons were not the only reason for her termination, and that her taking FMLA leave was at least one motivating factor. See Di Giovanna, 651 F. Supp. 2d at 205. Although Benimovich may be unable to succeed in making this showing at trial, the Court finds that, at this stage of the litigation, she has raised a genuine issue of material fact as to the reasons for her termination.

As to Defendants' first reason—Benimovich's assistance to Yampolskiy in fraudulently

10

manipulating hours worked—Benimovich admits that she issued checks reflecting adjusted hours, but emphatically denies that she acted fraudulently or in any coordinated manner with Yampolskiy.[6] (Pl.'s 56.1 ¶¶ 12-36.) Department heads regularly adjusted the number of hours worked in a given week and Benimovich never discussed these revisions with them. (Benimovich Aff. ¶ 6; Yampolskiy Aff. ¶ 3; Tirado Dep. 153:13-58:25.) In fact, according to Yampolskiy, Rubin reviewed and approved his revisions. (Yampolskiy ¶ 4.) Benimovich further contends that any alleged mistake of this sort could not have contributed to her termination because Landa only learned of these allegations after her termination. (Landa Dep. 128:23-29:24.) Moreover, Mayer Spilman was aware of this conduct in June or July 2010, and while Yampolskiy might have been disciplined, Benimovich never was. Defendants have submitted time report cards in which the number of hours worked were adjusted, but they concede that the adjustments were made by Yampolskiy. (Defs.' Ex. E; Defs.' 56.1 ¶ 22; Pl.'s 56.1 ¶ 22.) There is no documentary evidence to show that Benimovich assisted in making such adjustments.

As to Defendants' second reason—Benimovich's failure to pay health care premiums and vendors on time—Benimovich disputes Defendants' assertion that she was responsible for any late payments. Although Landa testified that Benimovich would send him bills that were three or four months late, (Landa Dep. 32:12-33:13), Benimovich testified that she promptly forwarded invoices to Landa and that any delays were due to Landa. (Benimovich Aff. ¶ 8.) Benimovich recalled Landa speaking with her "once or twice" about a mistake but she was never disciplined for these errors. (Benimovich Dep. 62:11-21; Landa Dep. 100:3-01:14.) Moreover,

---

[6] Yampolskiy was the Director of Nutrition Services from January 2007 until August 2010, when he was terminated. (Yampolskiy Aff. ¶ 3; M. Spilman Dep. 129:21-22.) According to Yampolskiy, he was never counseled or criticized for his adjustments to the number of hours worked. (Yampolskiy Aff. ¶ 5.) According to Mayer Spilman, however, Yampolskiy was disciplined for this conduct and when he didn't change it, he was terminated. (M. Spilman Dep. 128:20-29:24.)

the bills and invoices submitted to the Court do not even reflect Benimovich's involvement in the payment process. (Defs.' Exs. G & H.) In fact, these submissions do not include any checks reflecting when health care premiums were paid and by whom. (Defs.' Ex. G.)

Finally, as to Defendants' third reason—Benimovich's failure to issue accurate paychecks—Defendants submit several examples of checks that were voided by Benimovich but they could only speculate as to why the particularly checks were voided. (Defs.' Ex. I; Landa Dep. 150:3-55:22.) Benimovich admits that "mistakes occasionally happened," (Pl.'s 56.1 ¶ 46), and Mayer Spilman testified to one instance in which he discussed such mistakes with her, (M. Spilman Dep. 154:11-22), but she alleges that she was "never criticized, counseled or disciplined or even spoken to about this alleged issue." (Pl.'s 56.1 ¶ 46.)

Benimovich has put forth sufficient evidence upon which a reasonable jury could find Defendants' explanations for her termination to be pretextual. See Voltaire, 823 F. Supp. 2d at 95 (denying summary judgment in light of the "suspicion of mendacity" established by plaintiff regarding the documents supporting defendants' reason for termination, the disbelief of the stated reasons for termination and the close temporal proximity between the assertion of FMLA rights and termination).[7]  Accordingly, Benimovich's retaliation claim survives summary judgment.

### B. NYSHRL and NYCHRL Claims

#### 1. Discrimination

Defendants also assert that Benimovich's NYSHRL and NYCHRL discrimination claims fail as a matter of law because Defendants were not aware of her disability at the time they

---

[7] Defendants also argue that Benimovich waived her FMLA rights because she failed to accept and complete the certification of healthcare provider forms offered to her. See Muhleisen v. Wear Me Apparel LLC, 644 F. Supp. 2d 375, 390 (S.D.N.Y. 2009). Benimovich contends that she never received these forms and that she was never provided with a copy of Fieldston's FMLA policy. (Pl.'s 56.1 ¶¶ 6, 76-79.) Disputed issues of fact exist regarding whether she ever received the FMLA forms and summary judgment on this ground is thus inappropriate.

decided to terminate her and had legitimate, non-discriminatory reasons for her termination. Plaintiff responds that disputed issues of material fact exist as to both of these arguments.

The three-step burden shifting framework set forth above also applies to Benimovich's claims of disability discrimination under the NYSHRL and NYCHRL. See Katz v. Adecco USA, Inc., 845 F. Supp. 2d 539, 547 (S.D.N.Y. 2012). To establish a *prima facie* case for disability discrimination under either statute, she must show that: (1) her employer was subject to the NYSHRL and/or NYCHRL; (2) she was disabled within the meaning of the statutes; (3) she was otherwise qualified to perform the essential functions of the job, with or without reasonable accommodation; and (4) she suffered adverse employment action because of her disability.[8] Graves v. Finch Pruyn & Co., 457 F.3d 181, 183-84 (2d Cir. 2006). As previously discussed, disputed issues of fact exist as to when and why Defendants decided to terminate Benimovich, thus precluding summary judgment on the NYSHRL and NYCHRL discrimination claims, see Loeffler v. Staten Island Univ. Hosp., 582 F.3d 268, 277-78 (2d Cir. 2009) (explaining that claims brought under the NYSHRL are co-extensive with federal law, while NYCHRL claims must be reviewed "independently from and more liberally than their federal and state counterparts") (quoting Williams v. N.Y.C. Hous. Auth., 61 A.D.3d 62, 66-69 (N.Y. App. Div. 2009)), as well as on the aiding and abetting claim.[9]

---

[8] Defendants are not arguing that Benimovich's disability does not fall within the definition of "disability" under the NYSHRL and NYCHRL. (Defs.' Mem. 19 n.5.)

[9] It is unclear from Defendants' motion whether they are also moving for summary judgment on the aiding and abetting claim. Because the Court is denying summary judgment as to the NYSHRL and NYCHRL discrimination claims, the aiding and abetting claim must proceed to trial as well. In any event, the parties do not dispute that individual Defendants Landa and Rubin "actually participated in the conduct giving rise to a discrimination claim," a requisite to bringing an aiding and abetting claim. See N.Y. Exec. Law § 296(6); N.Y.C. Admin. Code § 8-107(6); Tomka v. Seiler Corp., 66 F.3d 1295, 1317 (2d Cir. 1995), abrogated on other grounds by Burlington Indus., Inc. v. Ellerth, 524 U.S. 742 (1998).

### 2.     Failure to Accommodate

Finally, Defendants move for summary judgment on Benimovich's failure to accommodate claim. Defendants contend that Benimovich failed to request any accommodation and therefore Defendants were not obligated to engage in the "interactive process" required by the statutes. Defendants further assert that the only request she made was for leave, which was granted, and that she was paid for the duration of her leave. Finally, they argue that to the extent Benimovich requested an accommodation, their decision to terminate her before this request was made precludes a finding that they failed to provide a reasonable accommodation. Benimovich responds that she requested a designated parking spot in the fall of 2009 and a leave of absence in August 2010, but that Defendants failed to provide a reasonable accommodation and engage in an interactive process with her, as demonstrated by her termination while on leave.

A plaintiff states a *prima facie* failure to accommodate claim by demonstrating that: (1) she is a person with a disability under the meaning of the NYSHRL or NYCHRL; (2) an employer covered by the statutes had notice of her disability; (3) with reasonable accommodation, the plaintiff could perform the essential functions of the job at issue; and (4) the employer refused to make such accommodations. See Mitchell v. Washingtonville Cent. Sch. Dist., 190 F.3d 1, 6 (2d Cir. 1999); see also DeNardi v. DRA Imaging, P.C., 605 F. Supp. 2d 550, 557 (S.D.N.Y. 2009) (noting that the same *prima face* case applies to state and federal claims). Because disputed issues of fact exist as to when Defendants decided to terminate Benimovich and on what grounds, and as to whether Benimovich requested and was provided a reasonable accommodation, all of which are material to this claim, the Court denies Defendants' motion for summary judgment as to this claim as well.[10]

---

[10]   The Court notes, however, that to the extent the failure to accommodate claim seeks to recover for the same conduct as Benimovich's FMLA claim—Defendant's failure to give her the full period of her leave—she is unable

## IV. Conclusion

For the foregoing reasons, Defendants' motion for summary judgment is denied in its entirety. The Clerk of Court is respectfully directed to close docket number 15.

The parties' joint pretrial order and additional submissions required by Rule 5 of the Court's Individual Rules and Practices are due thirty (30) days from the date of this Order. This case shall be trial ready sixty (60) days from the date of this Order.

A telephone conference is scheduled for March 29, 2013 at 3:00 p.m. The parties shall jointly call Courtroom Deputy Allison Cavale at (212) 805-0162 at that time.

SO ORDERED.

Dated:  March 22, 2013
        New York, New York

_____
Ronnie Abrams
United States District Judge

---

to recover under the FMLA and the NYSHRL/NYCHRL for the same loss. See 29 C.F.R. § 825.702(a) ("When an employer violates both FMLA and a discrimination law, an employee may be able to recover under either or both statutes" but "double relief may not be awarded for the same loss. [W]hen remedies coincide a claimant may be allowed to utilize whichever avenue of relief is desired."); see also Rogers v. N.Y. Univ., 250 F. Supp. 2d 310, 315 (S.D.N.Y. 2002). This issue will be resolved following trial.